## Adam Jacoby & Brother *v.* Westchester Fire Insurance Company of New York, Appellant.

*Practice, C. P.—Pleading—Denial by affidavit—Rule of court—Insurance.*

Where a rule of court provides that when facts, averred in a statement of claim, are not specifically denied by affidavit, essential averments not so denied shall be taken as admitted, and where plaintiff avers facts essential to recover on a policy of fire insurance and the affidavit alleges that defendant fraudulently set fire to his building and fraudulently induced an adjustment of the loss, the court and jury are bound to assume all other material facts alleged in the statement as true, and the contest will be confined to the two issues of fact thus raised.

*Evidence—Pleadings—Issue.*

Where the pleadings in a suit on an insurance policy raise only two ques-

tions, neither one of which is as to the sufficiency or verity of the allega-
tions in the proofs of loss the rule will be enforced that no evidence shall be
heard to defeat the recovery which the issues of fact do not require.

*Evidence—An offer good only in part inadmissible.*

An offer to prove a fact in itself admissible is bad when it joins there-
with an offer to prove facts clearly inadmissible. It is not the duty of the
court to separate the admissible from the inadmissible.

*Evidence—Communication of suspicions not admissible to prove crime.*

Two persons by communicating their suspicions to each other cannot
thereby furnish evidence to convict a third party of crime.

*Evidence—Attempt to close mouth of witness—Origin of a fire.*

An offer to show that plaintiff told a witness and another person that
they were talking too much about a fire, made for the purpose of showing
a fraudulent attempt to close the mouths of witnesses and prevent an in-
vestigation, was properly excluded in a suit on the policy, there being no
effort to show what the talk was of which complaint was made.

Argued March 21, 1899.   Appeal, No. 5, March T., 1899, by
defendant, from judgment of C. P. York Co., Oct. T., 1897,
No. 17, on verdict for plaintiffs.   Before RICE, P. J., BEAVER,
ORLADY, SMITH, W. D. PORTER and BEEBER, JJ.   Affirmed.
Opinion by BEEBER, J.

Assumpsit on policy of fire insurance for $500.

It appears from the evidence that the property was destroyed
by fire June 15, 1897.   Twenty-two companies, including de-
fendant, had insured in various sums amounting in the aggregate
to $16,000.   Nineteen of these companies refused payment of the
loss alleging that the plaintiffs had themselves set fire to the
property insured and that they had also been guilty of fraud,
false statements and overinsurance.   It appears from the record
that under the rule of court of York county, plaintiffs filed a
sworn statement containing specific averments of facts ; that this
statement was met by an affidavit wherein certain averments of
fact were set up in denial, to wit: that plaintiffs had fraudulently
set fire to their own property for the purpose of defrauding de-
fendant, and second, that defendant had been induced to agree
to an adjustment of the loss by false and fraudulent returns and
statements of the value of the property insured.   Other facts
necessary to recovery had been fully and explicitly set forth by
the plaintiffs in their specific averments of fact and were not
denied by defendant in his affidavit.   The rule of court of York

county provided that "essential averments of fact by the plaintiff not denied by defendant by affidavit filed with or before plea pleaded shall be taken as admitted."

The plaintiffs presented certain points, which points and answers were as follows:

[1. The undisputed evidence being that the proof of loss was executed by the plaintiff, Adam Jacoby, two days after the adjustment of the loss, and the ascertainment of the amount due by the defendant company, nothing in proof of loss can affect the plaintiffs' right to recover. *Answer :* We answer this point as follows: Nothing in the proof of loss affects the plaintiffs' right to recover.] [1]

[2. Even although the proof of loss in this case contains the statement that there were no incumbrances upon the property insured, and although as a matter of law the two judgments offered in evidence by the defendants, one against Adam Jacoby and Samuel Jacoby, and the other against Samuel Jacoby and Adam Jacoby, are incumbrances against the firm property, that is no bar to the recovery by the plaintiffs, unless the jury find from the evidence that the plaintiffs, or one of them, wilfully and knowingly made the misstatements with a view to cheat the company. *Answer :* This point is affirmed.] [2]

Defendant submitted, inter alia, this point, which with the answer thereto, is as follows:

[3. If the jury find from the evidence that there were two liens on the insured property, when plaintiffs stated in their proof of loss that there were no incumbrances upon it, and said statement was made with full knowledge of said incumbrances, then said false statement avoids the policy of insurance, according to its terms and conditions, and there can be no recovery upon it. *Answer :* This point is refused.] [3]

The following offer of evidence was admitted on behalf of plaintiffs under objection of defendant:

[Mr. Niles: If the court please, we offer the affidavit of defense in this case for the purpose of showing that the agent of the defendant company on June 23, 1897, adjusted the loss sustained by plaintiffs by the fire, and upon the policy upon which this suit is brought, at $14,416.32, and that he agreed to that adjustment and that he agreed that the share thereof due and payable by the defendant was $450.51. For the purpose

of sustaining the issue on the part of the plaintiffs, and showing the adjustment of loss, and a promise by the representative of the defendant to pay the amount claimed in the declaration.

Mr. Latimer: All the same objections are renewed; and the further objection is taken that there is no averment in the specific averment of facts at all that the alleged agent of the company had the authority to bind the company by an agreement at all as stated; and therefore that anything agreed upon by the alleged agent of the company, as stated in the defendant's affidavit, procured by the fraud of the plaintiffs, is not binding upon it.

The Court: We admit this offer for the purpose of showing the adjustment by the defendant company of the amount of $14,416.32, and that the share thereof to be payable by the defendant company is $450.51.] [5]

[The court admitted under objection by defendant, plaintiffs' offer of evidence of the policy in suit; defendant's objection being to the offer of this paper alone as not being complete without a map referred to thereon.] [6]

The court rejected upon objection of plaintiff defendant's offers of evidence as follows:

[Defendant (through Mr. Wanner) proposes to prove by the witness that shortly after the fire,—on the Friday or Saturday following the fire,—this witness went to the office of Elmer C. Zeigler, an insurance agent, through whom a number of the policies had been placed on this property, and communicated to him what he had seen on the night of the fire, and what he knew of the connection of Adam Jacoby and I. Park Wogan with those matters. This to be followed by evidence that Elmer C. Zeigler, the agent, acting on that information, went to Adam Jacoby, represented to him what Mr. Robbins told him, and demanded that he should give up and assign to him the $3,000 of insurance that had been taken out of his office, and that upon that demand, after consultation with Samuel Jacoby, the written assignment already produced and marked No. 7 was executed by Adam Jacoby & Brother, assigning to Elmer C. Zeigler all the moneys due on the policies issued by the Scottish Union and National Insurance Company, the Springfield Fire and Marine Insurance Company, and the New Hampshire Fire Insurance Company, aggregating $3,000; and that that was

done to induce said Zeigler to keep the matter quiet, so that he might procure the other insurance placed in other companies.

To be followed by evidence also that said Elmer C. Zeigler, in pursuance of that assignment and agreement, withheld his knowledge of those facts from the other insurance companies at the adjustment, so that the losses were adjusted and the other companies agreed to pay, in ignorance of what had passed between Adam Jacoby and Samuel Jacoby and the said Elmer C. Zeigler.

This in connection with the other testimony already offered, to show fraud on the part of the plaintiffs,—the conspiracy on the part of the plaintiffs and Elmer C. Zeigler to defraud the insurance companies against whom suits have been brought for the moneys due on said policies; and especially in fraud of the defendant in this case, which is one of said companies.

Objected to (by Mr. Niles) as not proper legal evidence for the defense for the purposes offered, nor for any purpose; as being irrelevant, misleading and immaterial; and particularly what was done by Mr. Zeigler one of the insurance agents, cannot affect the plaintiffs, or be evidence for the defendant.] [7]

[Defendant (through Mr. Wanner) proposes to prove by the witness on the stand that Elmer C. Zeigler, who was the local agent of the Springfield Fire and Marine Insurance Company, and at whose request the witness adjusted the loss of that company, gave him no information whatever as to the facts which he had learned from Robbins, permitting him and the other adjusters to adjust this loss, and to agree upon the amount that should be paid, withholding from them all knowledge of the charges against the Jacobys. To be followed further by evidence from the same witness that after the adjustment Mr. Zeigler explained to him that the reason he did not tell what he knew at the adjustment, or before, was that he had agreed with the Jacobys not to let the adjusters know about these things, so that the charges made against the Jacobys would not come out against them.

This in connection with the testimony already given, to show fraud on the part of the Jacobys and Mr. Zeigler jointly in the concealment of these facts, and in the procurement of the adjustment of the loss under these policies.] [8]

[Mr. Latimer: We propose to prove by the witness that shortly

after the fire Adam Jacoby, one of these plaintiffs, came to the witness and told him that he and Frank Zeigler were talking too much about the fire, and if they did not stop it that he would make trouble; told the witness to keep away from Mr. Robbins, that Robbins was talking too much about the fire. For the purpose of showing fraud on the part of the plaintiffs, and a fraudulent attempt to close the mouths of witnesses, and prevent an investigation.

Objected to (by Mr. Niles) as not proper legal evidence for the defendant, and irrelevant and immaterial; not evidence for the purpose offered.

The Court: I think we ought to know what kind of talk it was before admitting this testimony. He may have been slandering these people. They may have been telling some circumstances that would justify this course. If it were matters offered in testimony, it might be admissible; and it may have been other things that are not admissible.] [10]

[The court rejected defendant's offer to prove that on Saturday before the fire the witness went to the factory after it had closed, and after working hours; that he made an effort to get in this same door that he has already testified about, with a latch key, and that the door was fastened on the inside, and he was unable to get in; that he went down to Hamilton avenue, and put his hand in a broken pane of glass, and unfastened the door down there, and in that way got into the factory; that he discovered a pile of kindling, which he had in the engine room piled up,— a large portion of it removed and carried of; that on Monday morning when he went there he found that the kindling wood had been replaced; that he noticed on Saturday night the same smell of turpentine, but thought it was done by filtering rags, and did not investigate. To be followed by evidence of another witness, that I cannot name now, that Adam Jacoby said that he had been in that shop on Sunday, the day before the fire, and between the Saturday night and the Monday on which the fire occurred, as a circumstance showing or tending to show the fraudulent burning of this property on the part of Jacoby.] [11]

The court charged the jury, inter alia, as follows:

[There is a question raised about the proof of loss. It is

contended on the part of the defense that because Adam Jacoby in the proof of loss stated that there were no incumbrances upon the premises that he could not recover, because it has been proven there were judgments to the amount of $4,500 upon the premises at the time of the fire.   We instruct you that that is not the law; that the proof of loss in this case, although there may have been a misstatement of fact in it, cannot prevent the plaintiff from recovering; because the incumbrance that is provided against in the policy is an incumbrance on the personal property, and an incumbrance upon that would be by chattel mortgage.   That is a matter for construction by the court, and we so construe the policy, that the provision against liens is as to incumbrances by chattel mortgages, and we do not have such a thing in the state of Pennsylvania.   At all events the incumbrance is upon the real estate; and we say that that is not a material misstatement in the proof of loss, and will not prevent the plaintiffs recovering.] [4]

Verdict and judgment for plaintiffs for $458.53.   Defendant appealed.

*Errors assigned* among others were (1–2) affirming plaintiffs' first and second points, reciting points and answers. (3) Refusing defendant's point, reciting point and answer. (4) To portion of the judge's charge, reciting same.   (5, 6) In admission of certain offers of plaintiffs under objection of defendant, reciting same.   (7, 8, 10, 11) Rejecting certain offers of testimony made by defendant and objected to by plaintiffs, reciting said offers.

*Nevin M. Wanner*, for appellant.—The answers to the points were incorrect, and the misstatements made by the insured were sufficient to avoid the policy: Hench v. Ins. Co., 122 Pa. 128; Chaflin v. Ins. Co., 110 U. S. 81; Gottsman v. Ins. Co., 56 Pa. 210; Cumberland Val. Mut. Pro. Co. v. Mitchell, 48 Pa. 374.

The offer made under the seventh assignment of error was clearly evidence to show the fraud and crime of defendant. Much latitude is necessarily allowed in proving fraud, which always lurks in hidden retreats: Glessner v. Patterson, 164 Pa. 224; B. & O. R. R. v. Hoge, 34 Pa. 214; Reinhard v. Keenbartz, 6 Watts, 93; Stauffer v. Young, 39 Pa. 455.

The offer in the eighth assignment of error was directly in

the line of the one set forth under the seventh assignment of error.   It would have been admissible even in a criminal case for conspiracy, where the incriminating declarations of one are admissible against all, after they are shown to be engaged in a common undertaking to cheat and defraud : Lowe v. Dalrymple, 117 Pa. 564; Jones v. Lewis, 148 Pa. 234; Palmer v. Gilmore, 148 Pa. 49; Weil v. Cohn, 4 Pa. Superior Ct. 443.

*H. C. Niles*, of *Niles & Neff*, with him *Horace Keesey*, for appellees.—The facts upon which the plaintiffs' claim was based were in effect admitted, and they had a right to rest upon the admission until evidence in avoidance thereof was introduced by defendant : Neely v. Bair, 144 Pa. 250.

This affidavit states as clearly as words can that the defendant company, through its agent, made an adjustment which they allege was not binding upon them because of fraud and misconduct on the part of the plaintiffs.   Their defense was not that no adjustment had been made by any one authorized by the company, but that their authorized agent had been deceived and misled, and that therefore they were not liable.   As in the case of Neely v. Bair, 144 Pa. 250, the defense was one of confession and avoidance, and the facts alleged in the plaintiffs' specific averment that were confessed, it was not necessary to prove.

To have admitted the evidence, the rejection of which is complained of in the tenth and eleventh assignments, would have been to allow to go into the jury box, stamped with the approval of the court as to admissibility, matter that could not in any fairness show or tend to show that the plaintiffs had been guilty of either fraud or arson : Bratton v. Mitchell, 3 Pa. 44; Cummings v. Williamsport, 84 Pa. 472; Weidler v. Bank, 11 S. & R. 134.

OPINION BY BEEBER, J., April 17, 1899 :

The court in which this case was tried has the following rule : " If the plaintiff shall file with his declaration or statement, separate and apart from his declaration or statement, a specific averment of facts sufficient to support his claims, verified by affidavit, and serve a copy thereof on the defendant or his counsel of record, such items of claim and material averments of facts as are

not denied by the defendant, by affidavit filed with or before plea pleaded, shall be taken as admitted." When the plaintiffs filed their statement they also filed with it, and served a copy on counsel of record for defendant, a specific averment of facts as allowed by the above rule of court. In this specific averment they alleged that the property insured was destroyed by fire on a certain date, that immediate notice of the loss in writing was given to the defendant, that they, within sixty days after the fire, made a statement to the defendant giving all the information which the policy required, that on the 23d day of June, 1897, the agent of the defendant duly authorized to act met with the plaintiffs and adjusted, ascertained and agreed that a certain sum was due and payable by the defendant, that on this date the notice required had been given to the defendant, the ascertainment and estimate had been made by defendant's agent, duly authorized to ascertain, estimate and adjust said loss, satisfactory proof of loss had been received by defendant and all things required by the policy had been done by the plaintiffs.

The defendant in its affidavit of defense, which it filed also as its denial required by the above rule, alleged that the fire which had consumed the insured property "was caused by the acts of the plaintiffs who wilfully and fraudulently set fire to the insured property" for the purpose of defrauding the defendant, that the plaintiffs "by false and fraudulent returns and statements of the value of the property" insured, and by wilfully, falsely and fraudulently concealing from the defendant the fact that the property insured was set on fire by them, fraudulently induced the defendant to adjust the loss and agree on a certain sum as due and payable to plaintiffs by defendant, and that defendant did not know of the said fraudulent and false returns and statements of the value of the insured property, nor that the property was set on fire by the fraudulent act of the plaintiffs for the purpose of defrauding the defendant until after the adjustment of the loss by the defendant.

From this statement of the pleadings it is clear that there were only two issues of fact to be tried, first, whether or not plaintiffs had fraudulently set fire to their own property for the purpose of defrauding the defendant, and second, whether or not the defendant had been induced to agree upon the adjustment of the loss and upon the payment of a certain amount by

the false and fraudulent returns and statements by the plaintiffs of the value of the insured property. All the other facts necessary to a recovery had been fully and explicitly set forth by the plaintiffs in their specific averment of facts, and as they had not been denied by the defendant they must be taken, under the above rule of court, as admitted. The plaintiffs were no longer bound to prove any of the facts alleged in their averment which had not been denied. The court and jury were compelled to assume that all these material and undenied facts in the averment were admitted to be true by the defendant, and to confine the contest to these two issues of fact: Neely v. Bair, 144 Pa. 250; Whitehead v. School District, 145 Pa. 418.

The first four assignments of error are to the action of the court in reference to the proofs of loss which were executed two days after the adjustment of the loss and the ascertainment of the amount due by the defendant. Bearing in mind what were the two issues of fact which the pleadings raised we do not think it can be successfully urged that the court below erred in this respect. Having been executed two days after the adjustment and ascertainment of the amount due, they can hardly be said in themselves to have induced the defendant to adjust and ascertain the amount due. It is earnestly urged that because they contained false statements as to the origin of the fire and as to the incumbrances on the property it was error for the court to say that nothing in the proofs of loss prevented recovering. But it must be remembered that the court in its charge to the jury had said plainly and emphatically that if they were satisfied by the preponderance of the evidence that plaintiffs had fired their own property there could be no recovery. Having heard this part of the charge the jury could not have supposed that the court meant, when it said that nothing in the proofs of loss prevented recovery, that the fact, if they found it to be a fact, that plaintiffs fired their property did not prevent a recovery. What was plainly meant and what the language clearly shows was that a false statement as to the origin of the fire made two days after the company had adjusted the loss should not prevent recovery. As to the mistaken or false statement in the proofs of loss in reference to the incumbrances, much could be said in favor of a view different from that entertained by the court below if it had appeared that the proofs of

loss had in any way induced the adjustment. The policy required the proofs of loss to state all incumbrances on the insured property. This clause does not seem to have been called to the trial judge's attention when about to make the ruling complained of. What he evidently had before him was that part of the language of the policy in reference to the property becoming incumbered by chattel mortgage, and his construction of that language is unexceptionable. But the case does not require us to decide what the word " incumbrance " included. The defendant had an undoubted power to waive the proofs of loss. This can be done by acts as well as by agreement. Sometimes it is done by notifying the insured, in case of total loss, that the insurance would be paid in full: Stauffer v. Manheim Mut. Fire Ins. Co., 150 Pa. 531 ; sometimes by acts indicating a recognition of liability, or repudiating liability for other reasons : Lebanon Mut. Fire Ins. Co. v. Erb, 112 Pa. 149; sometimes by some authorized person going to the scene of the fire, appointing appraisers as required by the terms of the policy, and promising payment on the finding of the appraisers : McGonigle v. Susquehanna Mut. Fire Ins. Co., 168 Pa. 1.

Where the pleadings in a case raise only two questions, neither one of which is as to the sufficiency or verity of the allegations in the proofs of loss, it is important to enforce the rule that no evidence shall be heard to defeat the recovery which the issues of fact do not require : Latimore v. Dwelling House Ins. Co., 153 Pa. 324. In the case now before us there was no question raised in the pleadings as to the form or truth of the proofs of loss. Had there been, the plaintiffs would have had an opportunity to show that the false statement as to incumbrances was mistakenly, inadvertently or accidentally made, or that it was not fraudulently, wilfully and knowingly made with a view to defraud the defendant, in which case the proofs of loss would not have prevented recovery : Franklin Fire Ins. Co. v. Updegraff, 43 Pa. 350 ; Cumberland Valley Mut. Protection Co. v. Mitchell, 48 Pa. 374. In view of the pleadings and issues in this case we think there was no error committed by the court in the charge to the jury as complained of in the first four assignments of error, and they are therefore overruled.

The fifth assignment of error is to the admission in evidence of the affidavit of defense which was offered by the plaintiffs

to show that the defendant adjusted the loss payable by it at a certain amount. We think this was properly admitted. The plaintiffs had stated in their averment of facts that defendant, by an agent duly authorized to act for it in the premises, had met with the plaintiffs and agreed that defendant's share of the loss was a certain amount. To this averment defendant replied that when it agreed to the amount of the loss for which it was liable it did not know that plaintiffs had fired their own property, and further that it was induced to agree to this amount by false and fraudulent statements and estimates as to the value of the property insured. It did not intimate anywhere that its agent was not authorized to adjust losses. In fact its affidavit was a confession of authority by its agent to do a certain act, and a plea of avoidance of the effect of the act because of certain frauds. It made no difference in legal effect which one of the defendant's many agents made this agreement, nor what was his name, nor who was present. Plaintiffs had confronted defendant with the bald averment that it was done by an agent duly authorized. If defendant had intended to deny that it was done by its agent, or that he was authorized to do it, it should have said so. The plaintiffs then would have known that they would be required to prove the agency and the authority. But when they found defendant did not deny either, but rested on its right to repudiate the adjustment because of plaintiffs' fraud, they had a right to assume they would not be required to prove agency: Neely v. Bair, 144 Pa. 250. This assignment is overruled.

The seventh, eighth, ninth, tenth, eleventh and twelfth assignments are to the exclusion by the court of certain offers of evidence. That part of the offer, embraced in the seventh assignment, to prove the conversations of the witness with the insurance agent Zeigler, out of the presence of the plaintiffs, was clearly inadmissible, nor could it be made admissible by offering to follow it up by proof of what Zeigler did afterwards in procuring the assignment to himself of the policies in which he was interested, and in concealing from defendant, when the adjustment was made, his knowledge of the charge that plaintiffs had set fire to the insured property. The witness by whom it offered to prove these conversations cannot be regarded as a conspirator whose acts and conversations under certain circum-

stances may become evidence against all in the conspiracy. What Zeigler did with the plaintiffs after he received the information, and whether he informed the defendant, at or before the time of the adjustment, of his knowledge of the charge that plaintiffs had set fire to the property, would have been relevant and admissible had the offer been to prove this alone, but to join with it an offer to prove what was clearly inadmissible rendered the whole offer inadmissible. It was not the duty of the court to separate the admissible from the inadmissible and admit the former. Moreover, the defendant cannot complain for all of the admissible part of its offer was subsequently put in evidence.

Had the court finally ruled as the eighth specification of error would seem to indicate, there might be room for alleging error, but an examination of the evidence immediately following shows that defendant was not satisfied with the ruling upon its offer embraced in this assignment for it immediately renewed it in effect and it was admitted. The witness was allowed to testify in full as to whether Zeigler had informed him at the time of the adjustment, of the charge having been made that plaintiffs had set fire to the property, and of the fact that an assignment of certain policies had been made to Zeigler. The admission of this evidence cured any possible error in ejecting the offer embraced in this assignment.

By the ninth assignment of error it appears that a witness was asked by the court whether certain doors of the building could be opened from the outside to which he replied that they could not; that he was particular in making them tight, and especially on that night. Counsel for defendant, whose witness he was, then asked him his reason for being so particular on that night, which question was excluded by the court upon objection. It was then further offered by defendant to prove by this witness that when he and another person left the building that night each said to the other "take a look at the factory to-night, for this is the last time you will see it," for the purpose of showing the suspicions of these two parties. This offer was also excluded. In this we think there was no error. It is too plain for argument that two persons cannot, by communicating their suspicions to each other, furnish evidence to convict third parties of a crime. Many witnesses had described the condition of

the property for a few days before the fire which was entitled
to whatever weight the jury chose to give, but we have been
shown no authority and we can find none ourselves which re-
quires the admission of what different persons told each other
as to their suspicions.

The tenth assignment of error shows an offer to prove that
shortly after the fire one of the plaintiffs told the witness and
another person that they were talking too much about the fire
and if they did not stop it he would make trouble, and that the
witness should keep away from one Robbins who was talking
too much about the fire, for the purpose of showing fraud on
the part of the plaintiffs and a fraudulent attempt to close the
mouths of witnesses and prevent investigation. The court ex-
cluded this because there was no effort to show what this talk
was of which complaint had been made. We do not think the
offer would sustain the purpose for which it was made. So long
as we do not know what it was that these men were saying
about plaintiffs we cannot say that plaintiffs' effort to stop their
talking was evidence of fraud or of an attempt to close the mouths
of witnesses or to prevent investigation. It was not charged
that the plaintiffs tried to induce these witnesses not to testify
on the trial. Under these circumstances it was not error to ex-
clude this offer.

The eleventh assignment of error was to the refusal of the
court to allow the defendant to show by a witness, who had been
in the employ of the plaintiffs, that on Saturday night when he
visited the factory he found that part of a kindling pile had been
removed, which part, on his return on Monday, he found had
been replaced, and that on Saturday night at this same visit he
noticed the smell of turpentine. This was offered to show, or as
tending to show, the fraudulent burning of the property of plain-
tiffs. We cannot see that it does either. The causal connection
between removing and replacing a pile of kindling wood and the
fraudulent burning of insured property is not apparent, especially
when there is an interval of two days between the two occurrences.
In any event the defendant cannot complain because it was fully
shown by the evidence on both sides that one of the plaintiffs and
his bookkeeper visited the premises after midnight within an hour
or two of the fire under circumstances to say the least unusual.
The spilling of the turpentine and its consequent smell were

also admitted by the plaintiffs, so that the defendant, in spite of the refusal of the offer embraced in this assignment, had the benefit of everthing included in this offer.   Indeed the proof of what it alleged to be the fact was finally stronger by other testimony offered by itself and by plaintiffs, for, as we have said, one of the plaintiffs and his bookkeeper were clearly shown to have been on the premises one or two hours before the fire, which we think much more likely to convince the jury of the truth of defendant's contention than its offered proof of the presence of some one, not known to any one, on the premises during the Sunday preceding the Monday night in which the fire occurred.   This assignment is overruled.

The twelfth assignment was abandoned at the argument. The sixth assignment becomes unimportant in view of the fact that defendant offered the map in evidence which was received. If it was error to allow the policy to be offered in evidence without offering the map with it, it was cured by the subsequent receipt of the map in evidence.   This assignment is also overruled.

Judgment affirmed.